In the Matter of the Will of WILLIAM CARROLL, Deceased.

RALPH C. CARROLL, JR., et al., Infants, by BENJAMIN F. SCHREIBER, as Special Guardian, et al., Appellants; PAUL A. CURTIS, Respondent.

Argued April 19, 1937; decided May 25, 1937.

*Benjamin F. Schreiber*, as special guardian, for Ralph C. Carroll, Jr., et al., infants, appellants. The appointment to respondent was void in its entirety, and the Appellate Division was not justified in severing the bequest so as to sustain part of it. (*Matter of Flagler*, 248 N. Y. 415; *Matter of Murtha*, 259 N. Y. 456; *Matter of Taylor*, 259 N. Y. 578; *People* v. *Parkin*, 263 N. Y. 428; *Matter of Sherman*, 227 N. Y. 350.) The children of Ralph C. Carroll are proper objects of the power of appointment since they are the donee's blood relatives and, therefore, her " kindred " within the meaning of that term as employed by the donor. (*Matter of Corlies*, 150 Misc. Rep. 596; 242 App. Div. 703; *Matter of Freeman*, 40 Pa. Ct. 31; *Butler* v. *Elyton Land Co.*, 84 Ala. 384; *Witter* v. *Walker*, 62 Ga. 142.) The property appointed in the specific residuary clause of the donee's will vested in interest in the infant children immediately on the donee's death. Custody alone was deferred and there is no unlawful suspension of the power of alienation. (*Matter of Hitchcock*, 222 N. Y. 57; *Steinway* v. *Steinway*, 163 N. Y. 183; *Warner* v. *Durant*, 76 N. Y. 133; *Fulton Trust Co.* v. *Phillips*, 218 N. Y. 573; *Matter of Trevor*, 239 N. Y. 6; *Matter of Talbot*, 126 Misc. Rep. 80; 215 App. Div. 724; *Cammann* v. *Bailey*, 210 N. Y. 19; *Griffin* v.

*Shepard*, 124 N. Y. 70; *Crawford* v. *Dexter*, 178 App. Div. 764; 224 N. Y. 586; *Curtis* v. *Curtis*, 184 App. Div. 274; *Matter of Hoyt*, 116 App. Div. 217; 189 N. Y. 511; *Matter of Bavier*, 164 App. Div. 358.) The invalid bequest to respondent passes under the specific residuary clause in the donee's will to the children. (*Matter of Cole*, 235 N. Y. 48; *Austin* v. *Oakes*, 117 N. Y. 577; *Lockwood* v. *Mildeberger*, 159 N. Y. 181; *McLean* v. *McLean*, 174 App. Div. 152; 223 N. Y. 695.)

*Daniel J. Mooney, Abel I. Smith* and *Floyd D. Frost* for Ralph C. Carroll, appellant. The attempted exercise of the power of appointment, except in favor of Ralph C. Carroll, is void. The appointments to respondent and the children of Ralph Carroll are void, as the persons therein designated as beneficiaries are not proper objects of the power granted to the donee by the will of her father. (*Sibley* v. *Perry*, 7 Ves. 552; *Ralph* v. *Carrick*, 11 Ch. Div. 873; *Ross* v. *Ross*, 20 Beav. 645; *King* v. *Savage*, 121 Mass. 303; *Jackson* v. *Jackson*, 153 Mass. 374; *Hillen* v. *Iselin*, 144 N. Y. 365; *Matter of Chittick*, 243 N. Y. 304; *Palmer* v. *Horn*, 84 N. Y. 516; *Matter of Wilcox*, 194 N. Y. 288; *Gallagher* v. *Crooks*, 132 N. Y. 338; *Carr* v. *Bedford*, 2 Ch. 77; *Farmers Loan & Trust Co.* v. *Polk*, 166 App. Div. 43; *Wallace* v. *Diehl*, 202 N. Y. 156; *Matter of Evans*, 234 N. Y. 42.) The attempted exercise of the power of appointment by the second paragraph of the will is void under section 11 of the Personal Property Law (Cons. Laws, ch. 41), and sections 42 and 178 of the Real Property Law (Cons. Laws, ch. 50), inasmuch as it attempts to postpone the absolute ownership of property for more than two lives in being at the time of the creation of the trust. (*Hillen* v. *Iselin*, 144 N. Y. 365; *Fargo* v. *Squiers*, 154 N. Y. 250; *Genet* v. *Hunt*, 113 N. Y. 158; *Bishop* v. *Bishop*, 257 N. Y. 40; *Matter of Chittick*, 243 N. Y. 304; *Matter of Horner*, 237 N. Y. 489; *Matter of Bostwick*, 236 N. Y. 242; *Matter of Wilcox*, 194 N. Y. 288; *Matter of Johnson*, 233 App.

Div. 587; *Matter of Durand*, 250 N. Y. 45; *Fargo* v. *Squiers*, 154 N. Y. 250.) The attempted exercise of the power of appointment to respondent is absolutely void, as both the donee and appointee intended thereby to benefit the husband of the donee, contrary to the will of her father, and the fund passes under the alternative provisions of the father's will to Ralph Carroll, his only next of kin surviving the donee. (*Chenoweth* v. *Bullitt*, 224 Ky. 698; *Matter of Wright*, [1920] 1 Ch. 108; *Portland* v. *Topham*, 11 H. L. Cas. 32; *Wright* v. *Wright*, 225 N. Y. 329; *Matter of Hoffman*, 201 N. Y. 247; *Booth* v. *Baptist Church*, 126 N. Y. 215; *Kerr* v. *Dougherty*, 79 N. Y. 327; *Matter of Hayman*, 134 Misc. Rep. 803; 229 App. Div. 853; 256 N. Y. 557; *Macy* v. *Burchill*, 131 Misc. Rep. 602; 223 App. Div. 702; 248 N. Y. 637.) The attempted power of appointment having failed, the fund passes to Ralph Carroll under the alternative provision of paragraph fifth of the will of William Carroll, which fixes the vesting in the absence of any valid disposition of that nature. (*Salter* v. *Drowne*, 205 N. Y. 204; *New York Life Insurance & Trust Co.* v. *Winthrop*, 237 N. Y. 93; *Matter of Fabbricotti*, 264 N. Y. 687.)

*Harland B. Tibbetts* and *Charles H. Kraus* for Grace Carroll et al., as trustees, appellants. The agreement between the donee-appointor under the power of appointment vested in her by her father's will, and respondent, to divert to a stranger to the power a portion of the property appointed to respondent by the donee, was a fraud on the power. (*Chase Nat. Bank* v. *Chicago Title & Trust Co.*, 155 Misc. Rep. 61; 246 App. Div. 201; *Matter of Moehring*, 154 N. Y. 423; *Hutton* v. *Benkard*, 92 N. Y. 295; *Cutting* v. *Cutting*, 86 N. Y. 522; *Portland* v. *Topham*, 11 H. L. Cas. 32.) Since the appointment to respondent was made in connection with and in fulfillment of an agreement between respondent and the donee to divert a part of the property to a stranger, the fraud on the power was such that the entire bequest must be held

void. (*Topham* v. *Portland*, 11 H. L. Cas. 32; *Matter of Marsden*, 4 Drew. 594; *Daubeny* v. *Cockburn*, 1 Meriv. 626; *Lee* v. *Fernie*, 1 Beav. 483; *Salmon* v. *Gibbs*, 3 DeG. & Sm. 343; *Birley* v. *Birley*, 25 Beav. 299; *Pryor* v. *Pryor*, 2 DeG., J. & S. 205; *Matter of Kirwan*, 25 Ch. Div. 373; *Knowles* v. *Morgan*, 50 Sol. J. 117; *Farmer* v. *Martin*, 2 Sim. 511.) The terms of the letter signed by respondent are clear and unambiguous, and its terms may not be varied or contradicted by testimony of the executor or Curtis as to alleged prior conversations between or declarations of the parties to the agreement. (*Hutchison* v. *Ross*, 262 N. Y. 381; *Murdock* v. *Gould*, 193 N. Y. 369; *Middleworth* v. *Ordway*, 191 N. Y. 404.)

*Jeremiah T. Mahoney* and *Joseph W. McGovern* for respondent. The respondent was a proper object of the power of appointment granted to the donee by the will of her father. (*Matter of Corlies*, 150 Misc. Rep. 596.) Where the exercise of a power of appointment is sought to be invalidated as a " fraud on the power," the intention and purpose of the appointor in making the appointment is the essential subject of inquiry. (*Matter of Wright*, [1920] 1 Ch. 108; *Topham* v. *Duke of Portland*, 5 Ch. App. 40.) An appointment, which is sought to be invalidated as a " fraud on the power," should be held partially valid and partially invalid, if it appears that it is the combined product of two separate and distinct intentions, one authorized, the other unauthorized. An agreement or understanding between appointor and appointee is material only in so far as it reveals the true intention of the appointor. (*Alexander* v. *Alexander*, 2 Ves. Sr. 641; *Chenoweth* v. *Bullitt*, 224 Ky. 698; *Lane* v. *Page*, Amb. 234; *Aleyn* v. *Belchier*, 1 Eden, 132; *Topham* v. *Duke of Portland*, 1 DeG., J. & S. 516; 11 H. L. Cas. 32; *Whelan* v. *Palmer*, 39 Ch. Div. 648; *Viant* v. *Cooper*, 76 L. T. 768; *Ranking* v. *Barnes*, 33 L. J. Ch. 539.) The evidence establishes a definite, unqualified and independent intention on the part of the donee to

appoint the sum of $150,000 to respondent, for his own exclusive benefit, regardless of any other intention she may also have entertained concerning an additional sum of money for her husband. (*People* v. *De Martini*, 213 N. Y. 203.)

*Charles H. Griffiths* and *Pearce H. E. Aul* for Harold A. Content, as executor of Elsa C. Milliken, deceased, petitioner. An appointment under a power, attended by circumstances clearly indicating an intent to benefit an appointee included within a class designated by the donor, is not void where, after execution of the will exercising the power, the donee obtains the signature of the appointee to a writing in which the appointee states that "in consideration" of her having appointed a sum of money to him, he will give a portion thereof to one not within the appointive class, in the absence of a showing that the signing of the writing was the inducing cause of, or consideration for, testatrix making the appointment. (*Pryor* v. *Pryor*, 2 DeG., J. & S. 205; *Central Trust Co.* v. *Dewey*, 179 App. Div. 112; 223 N. Y. 726; *Matter of Tinker*, 124 Misc. Rep. 723; 217 App. Div. 255; 244 N. Y. 51; *Matter of Southworth*, 164 App. Div. 825.)

HUBBS, J. In 1910 William Carroll died leaving a will by the fourth paragraph of which he devised and bequeathed the residue of his estate to his executors in trust to pay the income to his wife during her life. By the fifth paragraph he directed that upon the death of the wife the residuary trust be divided into two equal shares, the proceeds of one to be for the use and benefit of his daughter Elsa during her life, and the proceeds of the other share for the use and benefit of his son Ralph during his life. In the fifth paragraph he gave his daughter power by her last will and testament to dispose of the property so set aside for her use " to and among her children or any other kindred who shall survive her and in such shares and manner as she shall think proper." A similar power of appointment was given to Ralph to

dispose of his share " to and among his kindred or wife."
With respect to the share set aside for the use of the
daughter Elsa, the will provided that in the absence of
any valid disposition of the corpus by her, it should pass
" to her then surviving child or children, descendant or
descendants " and should there be no surviving child
or descendant of the daughter, then the share on her
decease should pass to the donor's " surviving heirs or
next-of-kin, according to the nature of the estate."

Elsa died on June 26, 1933, without leaving any child
or descendant her surviving. The mother, Grace Carroll,
survived her and was living at the time of the trial, as
was also the brother Ralph. Elsa left a will by which
she left $5,000 to her brother, and $250,000 to one Paul
Curtis, a cousin, such bequest to go to his son if he pre-
deceased her. The remainder of her share of the estate
of her father she gave to her executors in trust.

When Elsa's will was drawn, the petitioning executor,
Content, as her attorney, prepared the will and attended
to its execution and also prepared a letter directed to
Elsa by the legatee Paul Curtis, which letter read as
follows: " I am informed that by your last will and
testament you have given and bequeathed to me the sum
of Two Hundred and Fifty Thousand Dollars ($250,000).
In the event that you should predecease me and I should
receive the bequest before mentioned, I hereby promise
and agree, in consideration of the said bequest, that I
will pay to your husband, Foster Milliken, Jr., the sum
of One Hundred Thousand Dollars ($100,000) out of
the said bequest which you have given to me by your
said will."

It is not contended by any of the parties to this pro-
ceeding that Foster Milliken, Jr., husband of Elsa, was
of her kindred, and, therefore, a proper object of the
power granted to his wife in her father's will. The
question here involved is as to the effect of the attempted
provision for her husband upon the bequest to Paul
Curtis.

Content testified that he had advised Elsa that she could not lawfully make her husband a beneficiary of any part of her father's estate; that she had drawn a previous will in which she had given the residue of the estate of her father to her brother Ralph with a request that he pay to her husband the sum of $10,000 per annum; that he advised her that that provision could not be enforced; that on October 6, 1931, she told him that she was not satisfied; that she was growing away from her brother and that she wanted to increase the bequest to her cousin Paul Curtis; that she had given Curtis $50,000 in a prior will; that she wanted to leave him $250,000, and that he prepared the will with the prior will before him and on October 13 she and Mrs. Elliott came to his office where she executed the will; that after the will was executed she told him: " Paul would like to do something for Foster. He would like to leave him some of this money I am leaving to him, and Paul is perfectly willing to put this in writing to show his good faith." He then talked with Paul, dictated the letter and had it signed. He was not sure whether the letter was delivered to Elsa or whether he kept it for her. Curtis testified that several days before the will was executed Elsa told him she was going to make a new will; that she knew if her brother Ralph heard about it he would probably start a row with her mother; that she had previously left Curtis $50,000 and his son $50,000, and that she was going to leave him $150,000 and add to it $100,000 which she would like him to give to Mr. Milliken; that he told her if she wanted him to do so, he would sign a paper to that effect; that she said she did not know whether it would be necessary but if she wanted him to she would make a date for him to go down to Mr. Content's office; that she called him upon the day the will was executed and asked him to meet her there; that he was not present when the will was executed but that he went in afterwards and heard the letter dictated and signed it.

The Surrogate determined that the promise made by Curtis so vitiated and permeated the bequest to him that the appointment constituted a fraud upon the power and made the bequest to him void.

The Appellate Division, two justices dissenting, decided that the only reasonable interpretation to be placed upon the transaction is that Elsa desired to appoint $150,000 to her cousin and an additional $100,000 to her husband; accordingly, that the lawful appointment of $150,000 to Curtis is separable from the unlawful appointment of $100,000 to him for the benefit of the husband.

It seems to us that the conclusion is inescapable that the testimony of Content, the attorney who drew the instruments, and of Curtis, who was the legatee, do not affect the true intent and purpose of the letter. Stress is laid upon the fact as testified to by Content that the testatrix Elsa did not tell him of the understanding with Curtis until after the will had been executed. Nevertheless, it appears from the testimony of Curtis that she had an understanding with him prior to the execution of the will and the writing constituted only a record of the actual prior agreement. The Surrogate had the benefit of hearing the witnesses testify and of observing their conduct. He found nothing in their testimony to detract from the force of the letter signed by Curtis. Concededly, the attempted bequest for the benefit of the husband was not valid. Curtis alone testified that he was to receive $150,000 and the husband $100,000. Content testified that she told him she wanted to leave Curtis $250,000, and that he did not know until after the will was drawn of the understanding between Curtis and the testatrix. The letter says that the agreement to pay the husband $100,000 is in consideration of a bequest of $250,000. No one can say whether she would have left Curtis $100,000, $150,000 or a lesser or greater sum had it not been for the agreement to take care of her husband. Only by speculation can it be said that she would have left him $150,000 had it not been for

that agreement. Had it not been for her continued possession either personally or by her attorney of the promise on the part of Curtis, no one can say but what she might have changed the will. Curtis was a party to the attempted fraud on the power. If the bequest to him be sustained to the extent of $150,000 on his own testimony, he suffers no penalty. It seems to us that on the facts, the conclusion of the Surrogate was correct; that the entire bequest is involved in the intent to defeat the power and that it is impossible to separate and sustain the bequest to Curtis to the extent of $150,000.

Upon the general question the law of England is correctly stated in Halsbury's Laws of England (Vol. 23 [1st ed.], pp. 58–62):

" A person having a limited power must exercise it *bona fide* for the end designed; otherwise the execution is a fraud on the power and void. Fraud in this connection does not necessarily imply any moral turpitude, but is used to cover all cases where the purpose of the appointor is to effect some bye or sinister object, whether such purpose be selfish or, in the appointor's belief, a more beneficial mode of disposition of the property and more consonant with that which he believes would be the real wish of the creator of the power under the circumstances existing at the date of the appointment.

" In all cases of fraudulent execution, the fraud consists in the exercise of the power for purposes foreign to those for which it was created and the exercise of the power may be held fraudulent on any of the three following grounds:

" (1) If the execution was made for a corrupt purpose.

" (2) If it was made in pursuance of an antecedent agreement by the appointee to benefit persons not objects of the power, even although the agreement in itself is unobjectionable. An appointment to a child an object of the power, and a contemporaneous settlement by him

of the appointed fund, is, however, valid unless it can be shown that the appointment was made in pursuance of a contract inducing the appointment.

" (3) If it was made for purposes foreign to the power, although such purposes are not communicated to the appointee before the appointment and although the appointor gets no personal benefit. * * *.

"Appointments cannot be severed, so as to be good to the extent to which they are *bona fide* exercises of the power, but bad as to the remainder, unless (1) some consideration has been given which cannot be restored, or (2) the court can sever the intentions of the appointor and distinguish the good from the bad."

In a footnote on page 60 it is said: " The fact that the appointor knows that the object intends to dispose of the fund in favour of a stranger to the power does not necessarily vitiate the appointment, but it may have that effect if it can be shown that the appointment would not have been made but for the agreement (*Pryor* v. *Pryor*, 2 DeG., J. & Sm. 205; *Daniel* v. *Arkwright*, 2 Hem. & M. 95; *Re Fooie and Purdon's Estate*, 1 I. R. 365). The question in each case is the character in which the appointee takes the property; if it is for his absolute benefit the appointment is good, but if this is not the appointor's purpose it is bad (*Langston* v. *Blackmore*, Amb. 289; *Fitzroy* v. *Richmond*, [*Duke*] [*No. 2*], 27 Beav. 190; *Birley* v. *Birley* [25 Beav. 299]; *Pryor* v. *Pryor, supra; Cooper* v. *Cooper*, L. R. 8 Eq. 312; *Roach* v. *Trood*, 3 Ch. D. 429, C. A.; *Re Turner's Settled Estates*, 28 Ch. D. 205, C. A.) "

Halsbury calls attention that powers of jointure are an exception to the rule that the court may not sever appointments except upon the conditions stated. The cases of *Lane* v. *Page* (27 Eng. Reprint, 155); *Aleyn* v. *Belchier* (1 Eden, 132; 28 Eng. Reprint, 634), and *Whelan* v. *Palmer* (39 Ch. Div. 648), cited by the Appellate Division, are jointure cases and distinguishable.

*Topham* v. *Duke of Portland* (1 DeG., J. & Sm. 517) is relied upon in support of the doctrine that the appointment is separable. We find nothing in that case that sustains the respondent's position.

In *Pryor* v. *Pryor* (*supra*) it is stated: "The donee of a limited power of appointment may well execute it in favour of an object of the power, though he believes and knows that the appointee will at once dispose of the property in favour of persons who are not objects of the power. ·But if, besides this belief and knowledge, there is a bargain between the appointor and appointee that the appointee shall make a disposition in favour of persons not objects of the power, and the just result of the evidence is, that the appointment would not have been made but for the bargain, then the appointment is bad."

In that case a husband and wife had a power of appointment of certain real estate limited to the use of one or more of their children " subject to such powers, provisoes remainders and limitations over (such charges, powers, provisoes, remainders and limitations over being for the benefit of the said children or some or one of them)." They appointed the property to two of their sons as joint tenants and contemporaneously the sons conveyed the property in trust to pay the income to themselves and their brothers and sisters for life with remainders in favor of their children. The intent there was clearly to provide a benefit for grandchildren of the donees of the power where the power gave them authority only to appoint for the use of their children. The bargain was considered in its entirety and the appointment held invalid. There the bargain apparently was largely a matter of inference but it was found to exist from the acts of the parties.

In *Daubeny* v. *Cockburn* (1 Meriv. 626, 644) it is said: " Either, then, you must hold that a child, giving a consideration for an appointment in its favour, is guilty of no fraud on the power; or you must wholly set aside the

appointment procured by the fraud. * * * It is a fraud upon the other objects of the power, who might not, and in all probability would not, have been excluded, but for this agreement. It is, more particularly, a fraud upon those who are entitled in default of appointment: for *non constat* that the father would have appointed at all if the child had not agreed to the proposed terms."

*Agassiz* v. *Squire* (18 Beav. 431, 458, 460 [1854]) involved a power to appoint a rent charge in favor of sons and policy moneys in favor of children; donee appointed the rent charge to a son who on the following day settled it in favor partly of himself and other objects and partly in favor of the husband of donee and others not objects; and made appointment of policy moneys to objects and others not objects, including donee's husband: "Here the whole object and scope of the appointment is to secure a benefit for Mr. Clifford. That it is that constitutes the fraud; this vice runs through every part of it, and the whole set of deeds seems to me to have been constituted, not with the view of executing the power, *bona fide*, in favour of the objects of it, and in the course of so doing exceeding the power entrusted, but with the view of giving an advantage to the husband of the donee of the power. * * * I think that the transaction must be taken as a whole, that it was a fraud upon the power, and that this fraud runs through the whole transaction, the scope and object of which is confined to giving, by means of it, benefits to a person, who was, by the donor, excluded from being an appointee, or deriving any advantage from the exercise of the power."

In the case at bar we have written evidence which is corroborative of a prior agreement. It seems to us that the Surrogate was quite correct in concluding that it is impossible to separate the valid from the invalid disposition. To say that it clearly appears that the donee would have given $150,000 to Curtis had the bargain not been made is not justified. It clearly appears that an object of the appointment to Curtis was to secure a benefit to the husband of the donee who was

excluded by the donor of the power from being an appointee or benefiting from the exercise of the power. The purpose of the donee was to accomplish by an agreement with Curtis an end entirely foreign to the intent of the donor of the power. Her act constituted a fraud on the power in which Curtis actively participated. There was a bargain between the donee and Curtis by which, in consideration of the appointment, he agreed to dispose of a part of the legacy in favor of a person who was not an object of the power. That bargain resulted in vitiating not only the provision for donee's husband but also the bequest to Curtis within the meaning of the authorities heretofore cited.

The wording of the letter which he signed was " in consideration of the said bequest " he would pay to donee's husband $100,000 " out of the said bequest " of $250,000. It is hard to see how those plain words can be construed otherwise than a bargain to share his bequest of $250,000 with another not an object of the power. Such a bargain under all the authorities makes the entire bequest void. (Cf. 46 Yale Law Journal, 344; 49 C. J. p. 1298.)

The appellant Ralph C. Carroll contends that in permitting the donee to appoint to any of her kindred, the donor used the word " kindred " in a narrow sense and intended to limit the possible beneficiaries of the power to her next of kin. If correct in that contention, since the donee died without children, the result would be that she could appoint only to her brother, the appellant Ralph Carroll. There is no inconsistency or ambiguity in the will of William Carroll evidenced by the fact that he gave to his daughter a power of appointment to her children or any other of her kindred. Kindred has a well-established meaning, " blood relatives," as distinguished from that limited number of blood relatives embraced under the term " next of kin." William Carroll in his will used the words next of kin where it is apparent that it was his intention that the property was to pass as in the case of intestacy. The Surrogate has determined

that kindred was used in the generally accepted meaning of the word. That determination has been affirmed by the Appellate Division and there appears no reason for according to it a limited application.

A question is raised also as to whether the appointment of testatrix to the children of her brother, Ralph C. Carroll, of the residue of the property of which she had power of appointment did not violate the statute against perpetuities. Her direction is that the property shall be divided by her trustees; that out of the income they shall provide for the care, maintenance and support of each of the children until the child becomes twenty-one years of age, when the principal of the fund shall be paid over. If there was a vesting of the shares in the children upon the death of Elsa with custody subject to termination of the primary life estates, that is, the life tenancy of Grace Carroll, mother of Elsa, and during the minority of the children, there is no violation of the statute, for the only life estates of the property involved under the will of William Carroll are the life estates of Grace Carroll and of Elsa. As determined in *Matter of Hitchcock* (222 N. Y. 57, 71), where it is clear that the testamentary intent is to confer absolute ownership within the statutory period, the withholding of custody and physical possession for an additional term during which the power to administer is intrusted to a third party, does not create an unlawful perpetuity. Here the withholding of custody and control is only during the minority of the children when they could not act for themselves and it seems that there was no intent other than that the interests of the infants were to vest subject to such power of control.

The order of the Appellate Division should be modified in accordance with this opinion and as so modified affirmed, without costs.

CRANE, Ch. J., O'BRIEN, LOUGHRAN, FINCH and RIPPEY, JJ., concur; LEHMAN, J., dissents and votes to affirm.

Judgment accordingly.