THEODORE B. PITMAN *vs.* BENJAMIN PITMAN, JUNIOR, & others.

Norfolk.    May 10, 1943. — July 27, 1943.

Present: FIELD, C.J., DONAHUE, QUA, & RONAN, JJ.

*Power. Devise and Legacy,* Power. *Conflict of Laws. Will,* Revocation, Exercise of power of appointment. *Constitutional Law,* Full faith and credit. *Fraud.*

The law of this Commonwealth governed determination of the validity of the exercise of a testamentary power of appointment by a donee who died domiciled in another State but upon whom the power to appoint, "in such shares, for such estates, and on such conditions as may be permitted by the laws of" this Commonwealth, was conferred by the will of a decedent who died domiciled here, who was so domiciled when the power was created and whose estate subject to the power was located here; and such determination by our courts was not precluded under the full faith and credit provision of the Federal Constitution by a previous decree of a court of the other State adjudging that the donee's will had been revoked by his marriage subsequent to its execution.

An exercise, by a nonresident donee by his will, not made in contemplation of marriage but followed by a marriage, of a power given under the will of one domiciled here, if not made in fraud of the power, was

valid under the provisions of G. L. (Ter. Ed.) c. 191, § 9, notwithstanding such marriage, where it appeared that in default of exercise of the power the children of the donee and issue of deceased children would have been the persons interested in the property subject to the power to the exclusion of the donee's wife, who survived him, while under the law of his domicil he had died intestate and his wife was entitled to a one-third share of his estate and his children were entitled to equal parts of a two-thirds share.

A residuary clause in the will of a donee of a special testamentary power, in which he gave to persons who were within the terms of the power both his own property and property "over which I may have a power of appointment at the time of my death," was a valid exercise of the power.

An attempted exercise of a special testamentary power of appointment in partial performance of a contract previously made between the donee and his wife in contemplation of and to take effect only in the event of their divorce was invalid because in fraud of the power.

PETITION, filed in the Probate Court for the county of Norfolk on April 22, 1942.

The case was heard by *Reynolds*, J. From a decree entered by his order, the respondent Benjamin Pitman, Jr., alone appealed.

*T. Allen*, for the respondent Benjamin Pitman, Jr.

*J. B. Dolan*, for the petitioner.

*C. Gerstein*, (*L. Nevas* of Connecticut with him,) for Letteria C. Pitman, guardian.

RONAN, J. This is an appeal from a decree of the Probate Court for Norfolk County, allowing and admitting to probate a certain instrument as the last will of Benjamin Pitman in so far as it is in execution of certain powers of appointment granted to him in the will of Almira Pitman.

Benjamin Pitman, a resident of and domiciled in Stamford, Connecticut, died on February 26, 1942, leaving as his heirs at law and next of kin his wife, Helen, a son, Benjamin Pitman, Jr., and two minor daughters, Diane Therese and Lorraine Marie Pitman. The son was the issue of the marriage of Benjamin Pitman and Harriet Taylor Pitman, and the daughters, of his marriage with Letteria Curcurento Pitman. There were no children by his marriage with Helen Smith Pitman, his widow.

Almira Pitman, the mother of Benjamin Pitman, died on December 17, 1939, a resident of Brookline in this Common-

wealth. Her will and three codicils were duly admitted to probate in the Probate Court for Norfolk County. Trusts for the benefit of Benjamin Pitman were established by article 12 of her will and by article 1 of the first codicil of her will. The terms and conditions of each trust were identical. They provided for the payment of income to Pitman during his life and gave him a power to appoint the principal "to and among such one or more of the then living issue of my deceased mother, Maria Theresa Hollander, in such shares, for such estates, and on such conditions as may be permitted by the laws of the Commonwealth of Massachusetts, as he shall appoint by his last will duly admitted to probate." In default of appointment the trust fund was to be divided equally between the living children of Pitman and issue of his deceased children, principal to be paid to such of the children as were twenty-one years old at the death of their father or to the issue of a deceased child, and the income to be paid to the minor children until they became twenty-one years of age, when their shares were to be paid to them, with a provision for payment of the share of any child dying under that age to his issue or, in default of issue, to the surviving child or children and the issue of any deceased child.

A divorce was granted to Pitman's second wife, in Connecticut, on June 14, 1940. On that date she and Pitman entered into a written agreement in reference to the custody of the two daughters and the payment of alimony. In this agreement he purported to assign to her all his right, title and interest in the trust established for his benefit under article 1 of the first codicil in an amount not in excess of $25,000, and upon the transfer of this property to her he was to be relieved from the further payment of the alimony set forth in the agreement. In the event that she did not receive any of the trust property, he then attempted by the said agreement to appoint the trust property in favor of his two daughters to an amount not in excess of $25,000, and further agreed to exercise the power of appointment in their favor to the said amount by his last will and testament, and reserved the right to appoint the trust fund in excess of

$25,000 as he might see fit. No part of the trust fund has ever been paid to this former wife.

On July 1, 1940, Pitman executed his will. The will contained a provision by which he attempted to exercise the power granted to him under article 1 of the first codicil, by appointing the trust fund, to the extent of $12,500, to each of his daughters, and the balance, if any, to his son. The will recited that the "aforesaid provision is in accord with . . . a certain agreement made by me with my former wife . . . dated June 14, 1940, by which I undertook and agreed to assign to my said former wife, by way of alimony, all of my right, title, and interest in and to the trust created under Article I of the codicil of my mother's will . . . to the value and amount of Twenty-five Thousand (25,000) Dollars, and by the terms of which said agreement I authorized and empowered the trustees appointed under the terms of my mother's will and codicil to pay over and deliver to my said former wife an amount not in excess of Twenty-five Thousand (25,000) Dollars out of the principal of said trust, and by the terms of which I further undertook to exercise the power of appointment . . . over the remainder of the principal . . . in favor of my two children . . . [the daughters] to an amount not in excess of Twenty-five Thousand (25,000) Dollars, provided there had not been transferred and delivered to my said former wife as of the date of my death my interest in said trust to an amount not in excess of Twenty-five Thousand (25,000) Dollars." Pitman's will further provided that if the trustees under his mother's will had paid his former wife the amount provided in the said agreement, then he appointed the balance of the trust fund equally to his three children. The residue of his property was given in equal shares to his children. The petitioner and appellee in the instant case, Theodore B. Pitman, was named executor. No question is raised as to the proper execution of this instrument as a will.

Benjamin Pitman married Helen L. Smith on October 2, 1941. The Court of Probate for the county of Fairfield, in the State of Connecticut, entered a decree on April 2,

1942, refusing to admit to probate the instrument of July 1, 1940, and ordered that the estate be settled as an intestate estate on the ground that the said instrument was revoked by the subsequent marriage of Pitman. No appeal was taken from that decree.

The domiciliary State having decided that Pitman's will had been revoked, the first issue now presented for decision is whether the Probate Court of Norfolk County had jurisdiction to admit the instrument to probate in so far as it is in execution of the powers of appointment granted to Pitman under the will of Almira Pitman. The value at the death of Pitman of the property held in trust under the twelfth article of Mrs. Pitman's will amounted to $17,-150, and of that held in trust under article 1 of the first codicil to her will, $15,800. This property is held by the trustees appointed by the Probate Court of Norfolk County. They are required to administer the trusts in accordance with the will of Mrs. Pitman and are accountable to the said court for the faithful discharge of their duties. *Campbell* v. *Wallace,* 10 Gray, 162. *Jenkins* v. *Lester,* 131 Mass. 355. The property over which Pitman had a power of appointment belonged to the estate of his mother. He possessed only the authority to effectuate the transmission of the appointed property from her estate to those he was empowered by her to name as recipients of her property. A donee does not own the property over which he has a power of appointment, *Harmon* v. *Weston,* 215 Mass. 242; *Dexter* v. *Attorney General,* 224 Mass. 215; *Hill* v. *Treasurer & Receiver General,* 229 Mass. 474; *Minot* v. *Paine,* 230 Mass. 514; *Hogarth-Swann* v. *Weed,* 274 Mass. 125, even though it is considered, in equity, as his when his own estate is insufficient to pay his debts and the appointed property may be used for the benefit of his creditors; and such property has been regarded as a part of his estate for the purpose of taxation, where the taxing statutes so provide, and in permitting the issue of an appointee, who is a relative of the donee within G. L. (Ter. Ed.) c. 191, § 22, to take where the appointee predeceases the donee. *Clapp* v. *Ingraham,* 126 Mass. 200. *Thompson* v. *Pew,* 214 Mass.

520. *State Street Trust Co.* v. *Kissel,* 302 Mass. 328. *Graves* v. *Schmidlapp,* 315 U. S. 657.

It is settled in this Commonwealth since the leading case of *Sewall* v. *Wilmer,* 132 Mass. 131, that the validity of the exercise of a testamentary power of appointment by a nonresident donee, upon whom the power was conferred by the will of a decedent domiciled here at the time the power was created and at the time of his death, must be determined by the law of this Commonwealth. It was said in *Hogarth-Swann* v. *Weed,* 274 Mass. 125, 130, by Rugg, C.J., that "An instrument may be invalid as a will according to the law of the domicil of the donee of the power, and yet be upheld in the domicil of the donor of the power as a valid testamentary instrument and thus operative as an exercise of the power of appointment. *Sewall* v. *Wilmer,* 132 Mass. 131, 136. *Walker* v. *Treasurer & Receiver General,* 221 Mass. 600, 603. Where the power contains the provision that it must be exercised by will and the donee of the power domiciled in another country executes an instrument invalid as a will under the law of his domicil but good as to form and substance in the country of the domicil of the donor of the power, where also is the property to be appointed, it has been held that that instrument must be proved as a will in the courts of the latter country for the purpose of affecting the property to be appointed, though perhaps not for other purposes." That principle is illustrated in our own decisions by *Tudor* v. *Vail,* 195 Mass. 18, *Walker* v. *Treasurer & Receiver General,* 221 Mass. 600, *Russell* v. *Joys,* 227 Mass. 263, *Bundy* v. *United States Trust Co.* 257 Mass. 72, *Boston Safe Deposit & Trust Co.* v. *Prindle,* 290 Mass. 577, and in other jurisdictions by *Murphy* v. *Deichler,* [1909] A. C. 446, *Bartlett* v. *Sears,* 81 Conn. 34, *Matter of Sloan's Estate,* 7 Cal. App. (2d) 319, *Lane* v. *Lane,* 4 Pennewill (Del.) 368, *Ligget* v. *Fidelity & Columbia Trust Co.* 274 Ky. 387, *Prince de Bearn* v. *Winans,* 111 Md. 434, *David* v. *Atlantic County Society for Prevention of Cruelty to Animals,* 129 N. J. Eq. 501, *Matter of New York Life Ins. & Trust Co.* 209 N. Y. 585, *Chase National Bank* v. *Chicago Title & Trust Co.* 271 N. Y. 602, *Lawrence's Estate,* 136

Penn. St. 354, *Barret* v. *Berea College,* 48 R. I. 258, and
*Hollister* v. *Hollister,* 85 Ore. 316.

The basis for this general rule is that the property belongs
to the donor; that the donee is authorized only to direct
the devolution of the appointed property as agent of the
donor and that, in order to have the property pass to the
appointees, it must be transmitted in accordance with the
law of the domicil of the donor. It has at times been said
that the donor intended as a matter of inference that the
law of his domicil should govern the devolution of his
property. *Sewall* v. *Wilmer,* 132 Mass. 131. *Russell* v.
*Joys,* 227 Mass. 263. *White* v. *Holly,* 80 Conn. 438. *Harlow*
v. *Duryea,* 42 R. I. 234. In the present case the donor ex-
pressly provided that the principal of each trust was to be
paid over among such one or more of the living issue of her
mother "in such shares, for such estates, and on such con-
ditions as may be permitted by the laws of the Common-
wealth of Massachusetts, as he shall appoint by his last
will duly admitted to probate." It is clear that the validity
of the exercise of the powers was intended by the donor to be
determined by the laws of this Commonwealth.

The decree of the Court of Probate of Connecticut ad-
judging that Pitman died intestate did not, by virtue of the
full faith and credit clause of the Constitution of the United
States, art. 4, § 1, preclude the Probate Court of Norfolk
County from determining whether the instrument that Pit-
man executed was under our law a valid exercise by him, in
accordance with the will of his mother, of a power of appoint-
ment over property within the jurisdiction of one of our
Probate Courts. The Probate Court of Norfolk County was
not concerned with the descent or distribution of property
owned by Pitman at the time of his death — see *Crippen* v.
*Dexter,* 13 Gray, 330 — and the narrow issue presented to
that court was not whether the instrument executed by
Pitman was a will under the law of Connecticut but whether
that instrument was a will within the meaning of the will
of his mother, and whether the instrument was the execution
of the power to appoint as the term appoint was used by her
in creating the power. All that the Probate Court of Norfolk

County was concerned with was the construction of the will of Almira Pitman, and to determine whether the instrument was sufficient to appoint the property subjected to the power by the terms of her will. *Blount* v. *Walker,* 134 U. S. 607. *Matter of Sloan's Estate,* 7 Cal. App. (2d) 319. *Matter of Harriman,* 124 Misc. (N. Y.) 320; affirmed 217 App. Div. (N. Y.) 733.

The Probate Court of Norfolk County having jurisdiction to decide whether Pitman exercised the powers of appointment created by his mother's will, various grounds are urged by the appellant that the execution of the powers was invalid.

Pitman's will was refused probate in Connecticut because of his marriage subsequent to the execution of his will. That decision was required by a Connecticut statute (Gen. Sts. [1930] § 4880) which provides that "such marriage . . . shall operate as a revocation of such will." This statute makes no exception of wills made in contemplation of marriage or of powers of appointment contained in such wills. Our present inquiry is to determine according to our own law the effect of the subsequent marriage of Pitman upon the instrument by which he purported to exercise these powers, and to decide whether that was a valid exercise in accordance with the will of his mother. Our statute, G. L. (Ter. Ed.) c. 191, § 9, provides that a marriage subsequent to the execution of a will revokes the will unless it appears from the will that it was made in contemplation of marriage, but if "the will is made in the exercise of a power of appointment and the real and personal property subject to the appointment would not, without the appointment, pass to the persons who would have been entitled to it if it had been the estate and property of the testator making the appointment and he had died intestate, so much of the will as makes the appointment shall not be revoked by the marriage." The exception in this statute applies to all powers of appointment other than those where the appointed property, in default of the exercise of the power, would go to those who would take it if it was owned by the donee at the time of his death and he died intestate. *Paine* v. *Price,* 184 Mass. 350. *Yerxa* v. *Youngman,* 241 Mass. 251. *Old Colony Trust Co.* v.

*Allen,* 307 Mass. 40. If Pitman owned this property and died intestate it would, according to the law of Connecticut (Gen. Sts. [1930] §§ 4980, 5156), go one third to his widow and two ninths to each of his children. If there was a default of appointment the widow would get nothing, the son would get one third, and each of the daughters one third when each reached the age of twenty-one or, if she did not reach that age, her issue, or, if no issue, her surviving brother and sister. The distribution of the property in default of the exercise of the power of appointment is entirely different as to the persons who would take and the amount that each would receive from a distribution of the property as intestate property of Pitman. The son, who is over twenty-one, is the only child who would have a present right to receive his share of the principal if there was a default by his father in the exercise of the power of appointment. The widow would take nothing in the event of such a default, but if the property were owned by her husband she would get one third of it. Without further pursuing the inquiry, it is clear that property, in the absence of an appointment, would not pass to those who would take if it were intestate property of the donee, and consequently, by virtue of the statute, the will of Pitman was not revoked in so far as it was an exercise of the powers of appointment conferred upon him by the will of his mother. The property could not be considered as intestate property of Pitman without doing violence to the will of the donor. She intended that he should have a special power to appoint, and, if it were not exercised, that the property should pass to his children equally when they became of full age. She did not intend that the widow of Pitman or any person other than his children should share in her benefaction. The case is distinguishable from *Paine* v. *Price,* 184 Mass. 350, where the donee exercised a general power of appointment in favor of a third person in a will which was executed prior to her marriage and where the donor's will provided that, in default of appointment, one seventh of the property should go to the estate of the donee. It was held that the power of appointment as to one seventh was revoked by the subsequent marriage of the donee. That

case came clearly inside of the exception in the statute because under the provisions of the donor's will the donee's share became virtually intestate property of the latter in the absence of an effectual exercise of the power over that share. In the instant case the provisions of the donor's will prevented the property subject to the power from being distributed in the manner in which it would pass if it were intestate property of the donee, in the event there was no valid exercise of the power. See *In the Goods of Fitzroy,* 1 Sw. & Tr. 133; *In the Goods of Russell,* 15 P. D. 111.

Pitman was given powers of appointment under the third, seventh and twelfth articles, and the first article of the first codicil, of his mother's will. It appears from the agreed facts that the property included in the trusts established by the third and seventh articles was distributed during the lifetime of Pitman. We are now concerned only with the two powers of appointment created in reference to the two remaining trusts.

Pitman made no specific mention in his will of the power created by the twelfth article, but his will contained a residuary clause devising and bequeathing his own property and that over which he had a power of appointment in equal shares to his three children, and if the exercise was valid the minor appointees would be freed from the limitations placed on them in the case of a default of appointment. The question is, Was this a good exercise of the power? Under the law of this Commonwealth a general residuary clause in the donee's will, in the absence of anything indicating a contrary intent, is held to be a valid exercise of a general power of appointment. That was settled in *Amory* v. *Meredith,* 7 Allen, 397. See *Willard* v. *Ware,* 10 Allen, 263; *Bangs* v. *Smith,* 98 Mass. 270; *Sewall* v. *Wilmer,* 132 Mass. 131; *Cumston* v. *Bartlett,* 149 Mass. 243; *Hassam* v. *Hazen,* 156 Mass. 93; *Russell* v. *Joys,* 227 Mass. 263; *Boston Safe Deposit & Trust Co.* v. *Prindle,* 290 Mass. 577. *Old Colony Trust Co.* v. *Allen,* 307 Mass. 40. The law of England was changed by the wills act, St. 1 Vict. c. 26, § 27, so that it is now substantially similar to our own, but this act left unaffected special powers of ap-

pointment. We are aware of no decision in this Common-wealth holding that our rule applies equally to general and special powers, although it was strongly intimated in *Stone v. Forbes,* 189 Mass. 163, 169, that such should be the law. We have here a residuary clause which specifically refers to property subject to a special power of appointment. Pit-man intended in his residuary clause to dispose of the prop-erty over which he had a power of appointment and con-cerning which he had made no other specific provisions in his will. The only property subject to a power to which the residuary clause could relate was the trust fund created by the twelfth article of his mother's will. It is true that in default of appointment the property would be trans-ferred to his children when they reached twenty-one years of age. He may have desired them to have the full use and enjoyment of the property shortly after his death. The amount of his own estate was comparatively small. We think that his declaration that he was disposing of property over which he had a power of appointment, when he had no powers other than special or limited powers, manifests an intention to exercise the special power created by the twelfth article of the donor's will and that he has done so. *Stone* v. *Forbes,* 189 Mass. 163, 169, 170. Am. Law Inst. Restatement: Property, § 341.

The remaining question is whether the attempted exer-cise of the power created by the first article of the first codicil was invalid on the ground that its execution was in fraud of the power. The decree admitting the instrument to probate in so far as it was an exercise of this particular power must have been upon the ground that its execution was not a fraud on the power. The case was heard in the Probate Court upon a statement of agreed facts and docu-mentary evidence. The practice on appeals from the Pro-bate Courts is the same as on appeals in equity in so far as practicable and applicable, *Slater* v. *Munroe,* 313 Mass. 538, and in equity where the evidence is documentary or consists of agreed facts then on an appeal this court stands where the trial judge stood and considers the questions raised unaffected by the decision of the trial judge. *Har-*

*vey-Watts Co.* v. *Worcester Umbrella Co.* 193 Mass. 138. *Sewall* v. *Elder,* 279 Mass. 473. *Hopkins* v. *Hopkins,* 287 Mass. 542. *Berry* v. *Kyes,* 304 Mass. 56. *Veazie* v. *Staples,* 309 Mass. 123.

Pitman could not assign to his former wife any interest in the trust fund over which he had a special power of appointment. She was not one of the objects of the power. *Matter of Carroll,* 274 N. Y. 288. Neither could he by the said contract exercise the power in favor of his daughters as he could execute the power only by a testamentary provision. *Hill* v. *Hill,* 278 Mass. 44. Moreover, it was the intent of the donor that the discretion and judgment of the donee in the execution of the power should remain free and untrammeled up to the time of his death. *Thacker* v. *Key,* L. R. 8 Eq. 408. *Wilks* v. *Burns,* 60 Md. 64. *Farmers' Loan & Trust Co.* v. *Mortimer,* 219 N. Y. 290. Neither did the donor intend that he should be fettered or limited in the disposition of her property by the terms of any contract, or that, if a contract were made, he should be prevented from breaching it by the apprehension — no matter how ill founded it might be — that unless he performed, his estate might be liable for the breach. *In re Bradshaw,* [1902] 1 Ch. 436. *Northern Trust Co.* v. *Porter,* 368 Ill. 256. Am. Law Inst. Restatement: Property, § 340.

The exercise of the power was not a thing of barter or bargain, and there is a fraudulent exercise of a power not only where the donee acts corruptly for a pecuniary gain but where he acts primarily for his own personal advantage or that of a third person who is a non-object of the power and thereby abuses the power which the donor conferred on him. *Matter of Carroll,* 274 N. Y. 288. *Vatcher* v. *Paull,* [1915] A. C. 372. Halsbury's Laws of England, Vol. 23, page 58. It is indisputable that in executing the contract of June 14, 1940, Pitman was acting for the benefit of his wife in attempting to transfer to her a substantial amount of money and also for his own advantage in endeavoring to release himself from the payment of alimony. If he was unable to cause these trust funds to be transferred to her then he agreed to appoint them up to a certain amount to

the two daughters. The execution of the will by Pitman embodied these provisions of the contract, and by the recitals appearing upon its face was a partial performance by Pitman of the terms of the contract. The same motives that prompted the making of the contract also caused the execution of the will. A special testamentary power of appointment which a husband may exercise only in favor of his children can have no proper place in any contract settling property rights with his wife in the event that she is granted a divorce. The fact that the contract was to be of no force and effect if the divorce was denied clearly shows that the execution of the power did not result from any sound discretionary action upon the part of the donee in selecting the objects as their needs and necessities should honestly appeal to him, but that he exercised the power to facilitate the granting of a divorce, a purpose which was entirely alien to that for which the power was created. He could not exercise the power as one of the terms of a bargain with his wife and his attempt to do so constitutes an abuse of the power and renders its exercise ineffectual. *Chenoweth* v. *Bullitt*, 224 Ky. 698. *Matter of Carroll*, 274 N. Y. 288. *Central Trust Co.* v. *Dewey*, 179 App. Div. (N. Y.) 112. *Bostick* v. *Winton*, 1 Sneed, 524. *Wellesley* v. *Mornington*, 2 Kay & Johns. 143. *In re Perkins*, [1893] 1 Ch. 283. *In re Bradshaw*, [1902] 1 Ch. 436. *In re Wright*, [1920] 1 Ch. 108. *Cochrane* v. *Cochrane*, [1922] 2 Ch. 230. Am. Law Inst. Restatement: Property, § 353.

The decree is to be modified by reciting that there was no valid exercise of the power of appointment created by article 1 of the first codicil of the will of Almira Pitman, but that there was a valid exercise of the power created by the twelfth article of said will, and by admitting to probate the instrument executed by Pitman and dated July 1, 1940, in so far as it is in execution of this last mentioned power. As so modified the decree is affirmed.

*Ordered accordingly.*