## HORNE v. TITLE INSURANCE & TRUST CO. et al.

No. 7369.

District Court, S. D. California, Central Division.

June 29, 1948.

92

Lillick, Geary & McHose and Reid R. Briggs all of Los Angeles, Cal., for plaintiff.

Fred Aberle, of Los Angeles, Cal., for defendants.

MATHES, District Judge.

Plaintiff, a citizen of the State of Washington, seeks a declaratory judgment pursuant to 28 U.S.C.A. § 400. She invokes the jurisdiction of this court under 28 U.S.C.A. § 41(1), alleging that the matter in controversy exceeds the $3,000 minimum and is between citizens of different states. Defendant Title Insurance and Trust Company is a California corporation, defendant Day a citizen of Ohio, and defendant Miller a citizen of Illinois.

As appears from admissions in the pleadings, stipulations made at pre-trial and evidence adduced upon the trial, the controversy arises from the following facts: In 1940 defendant Title Insurance and Trust Company received certain properties from one George E. Day to be held in trust for the benefit of certain named beneficiaries in accordance with the provisions of a declaration of trust known as Trust No. P-10453, and then executed by the title company as "Trustee" and by

the trustor's son, William H. Day, as "co-trustee."

The trustor declared the trust to be irrevocable, and, so far as of interest here, the declaration further provided:

(1) that monthly payments of $833.33 be made to the co-trustee, William H. Day, during his lifetime, "in the payment of which the Trustee shall resort firstly to income and secondly to corpus";

(2) that monthly payments of $250 be made to "Frances Day (wife of William H. Day)" during the life of the trust following death of the co-trustee if "said Frances Day" survive him;

(3) that the remainder of the net income, if any, "shall be added to the principal of the trust estate * * *";

(4) that the trust shall terminate "upon the death of the survivor of * * * William H. Day and the said Frances Day (wife of William H. Day)", or upon remarriage of Frances Day if she be the survivor;

(5) that upon such termination of the trust, the entire net trust estate "shall pass and vest and thereupon be delivered by the Trustee," except 40% thereof not involved here, as follows:

(a) "20% thereof shall be distributed to [defendant] Walter S. Day";

(b) "20% thereof shall be distributed to [defendant] Richard Miller";

(c) "20% thereof shall be distributed to Gwendolyn Smith * * *", now Horne, plaintiff at bar; and

(6) that "as to the distributions to be made under the provisions * * * [just stated under (5)], William H. Day, during the * * * time * * * he shall be acting as co-trustee * * *, shall have the absolute right and power, with the approval of the Trustee, to prescribe and direct the Trustee that the distribution shall be made in different proportions than those provided; and in the event the said William H. Day, as such co-trustee, shall have exercised this discretionary power, with the approval of the Trustee, the Trustee shall make the distributions in accordance therewith. * * *"

Prior to 1946, Frances Day, the wife of William H. Day named in the declaration of trust, died. On May 17, 1946, the attorney for co-trustee William H. Day wrote plaintiff:

"As you know, Mr. Day recently remarried, and under the terms of Trust No. 10453, Mrs. Ruth Day does not and would not participate in any of the principal or income of said Trust at the time of Mr. Day's death.

"It is the desire and request of my client that separate agreements be entered into as between yourself and the present Mrs. Day, * * * whereby out of the 20% interest which you are entitled to under the terms of said Trust at the * * * death of Mr. Day, that you personally agree to pay * * * 7-1/2% of your amount [to the present Mrs. Day].

"Similiar requests are being made to Mr. Walter S. Day and Mr. Richard Miller. * * *"

Plaintiff replied requesting further information. On June 2nd co-trustee William H. Day himself wrote plaintiff at length of his wishes, stating in part: "Dad * * * drew up TR-10453 for my exclusive benefit but we both overlooked the possibility that Frances would precede me in death. * * * Now at my death Ruth gets nothing whatever except my own private estate. * * * Since Frances' share of 10453 was to have been 40% and since I do not wish to wreck the trust * * * I am trying to so arrange it that at my death Ruth can have something more. * * * Richard Miller and Walter Day each have agreed to give up 7-1/2% or about 1/3 of the 20% they will receive. * * * If you now agree, then Ruth will receive at my death 3 x 7-1/2%. * * *"

Plaintiff replied on June 10th declining to agree, saying: "Will, I don't see any reason why I should take any * * * actions in changing your Father's trust. * * *" On July 2nd, the co-trustee's attorney again wrote plaintiff enclosing a proposed agreement between Ruth Day and plaintiff, whereby the latter agreed to pay to the former 37 1/2% of the total amount received by plaintiff "as her dis-tributive interest under the terms of said Trust. * * *"

Plaintiff declined to execute the agreement, and on August 8th, co-trustee William H. Day wrote again at length urging plaintiff to consent to the proposal, adding: "Now Gwen I am going to be frank and say your letter to me hurt me so I simply could see no reason to reply. * * * I planned this trust myself and do not wish to change it to the detriment of anyone. * * * Now Gwen I have gone to great lengths in this letter to have peace and understanding. I cannot go any farther. * * *" Plaintiff did not reply; nor did she execute the requested agreement.

On November 26th, William H. Day, as co-trustee, wrote defendant Title Insurance and Trust Company, as trustee, that "the undersigned, by reason of the authority vested in him as co-trustee, and subject to the approval of your company as Trustee, hereby directs that the provisions [of the Trust] be changed * * *" so that upon termination, instead of 20% each, the distributive shares in question would be as follows:

(a) "28% thereof * * * to Walter S. Day";

(b) "28% thereof * * * to Richard Miller";

(c) "4% thereof * * * to [plaintiff] Gwendolyn Smith * * *."

On the same date the trustee acknowledged receipt of the co-trustee's requested amendment, and certified that "said amendment and modification be, and the same is hereby accepted and approved." On November 29th, the trustee wrote plaintiff informing her of the "direction from William H. Day, co-trustee * * * changing the distributable percentages * * * of said trust." The letter concludes: "Said direction has been accepted and approved by this company as trustee, in accordance with the terms of said trust."

On November 30th, William H. Day wrote plaintiff: "Your refusal to join Richard Miller * * * and Walter Day in assenting to any change has forced

me to go through a very expensive legal process."

"In accordance with original terms of the trust * * * you would have received 20% of the principal * * * at my death, whereas now you will receive but 4% as you will note. * * *

"I tried to arrange this in a friendly way but your uncompromising attitude made it impossible.

"I deeply regret being forced to do this. * * *"

On December 6th, plaintiff wrote the trustee: "Referring to your approval of the transfer of percentages from trust P-10453 in the amount of 16% of my 20% to Richard Miller and Walter S. Day. * * * This transaction involves the loss to me of roughly $16,000 and without just cause. Please send me at once all the information and reason why you sanctioned such a drastic change in this trust."

Defendant Title Insurance and Trust Company replied to plaintiff on December 9th: "The change in the distributive percentages * * * was made in accordance with the terms of the trust and upon the written direction of William H. Day, co-trustee. * * * Upon receipt thereof, the matter was submitted to our trust officer and trust counsel, neither of whom could find any valid reason why we should not accept and approve such direction. It was, therefore, accepted and approved in accordance with the terms of the trust."

On December 17, 1946, William H. Day died, and Trust No. P-10453 ipso facto terminated.

Plaintiff contends "that the purported exercise by said William H. Day of his power to effect such change in the distributive shares under said Declaration of Trust was invalid and ineffective and that it was not bona fide and in furtherance of the Declaration of Trust but was fraudulent and intended by means of said separate agreements to accomplish in substance distribution of a portion of the trust estate to a stranger to the trust, Ruth Day," who was not an object of the power of appointment reposed in William H. Day by the trustor.

As set forth in the pre-trial stipulation, "It is the position of Title Insurance and Trust Company that the co-trustee, William H. Day, was vested with the absolute right and power, with the approval of said Title Insurance and Trust Company, to prescribe and direct said Title Insurance and Trust Company that distribution be made in any proportions which said co-trustee, William H. Day, might desire, and that there was vested in William H. Day the discretionary power, with the approval of Title Insurance and Trust Company, to make distributions in accordance therewith and that when said direction is once made and said power exercised, that same cannot be collaterally or otherwise attacked by a beneficiary."

Plaintiff concedes that a trustee holding an absolute power to appoint within a limited class may be even arbitrary or capricious in its exercise, but urges that the power may not be exercised in bad faith or with an intent to benefit a non-object of the power, as plaintiff maintains was done here.

■ The powers of the "Trustee" and the "co-trustee" and the legal effect of their acts in question must be determined by the law of California [Erie R. Co. v. Tompkins, 1938, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487; In re Estate of Bowditch, 1922, 189 Cal. 377, 208 P. 282, 23 A.L.R. 735; Restatement, Conflicts, §§ 286, 287].

■■ It is of the very essence of the fiduciary relationship between trustee and beneficiary that the trustee at all times act in good faith, both in his dealings with the beneficiary and in carrying out the objects for which the trust was created. [cf. Cal.Civ.Code, § 2228.] The fact that a trustee is given "absolute discretion" in executing the power with which he is entrusted does not give him unbounded freedom of action. If his actions are not in good faith or would defeat a purpose of the trust, the trustee's discretion is subject to judicial control. [cf. Cal.Civ.Code, §§ 4, 5, 2269; In re Marsden's Trust, 4 Drewry 594, 62 Eng.Repr. 228 (1859); Scott on Trusts, § 187.]

■ In determining whether the trustee is acting fraudulently or in bad faith the "real question is whether it appears that the trustee is acting in that state of mind in which it was contemplated by the settlor that he should act." [Scott on Trusts, supra, § 187.] The evidence at bar establishes to my satisfaction that co-trustee Day would not have attempted to change the distributive shares but for a desire to benefit his wife Ruth—a non-object of the power. The agreements made between Ruth and defendants Richard Miller and Walter Day, read in the light of the correspondence, demonstrate that benefit to Ruth was the sole purpose of the appointment.

■ The rule has long been settled at common law that "If a donee of a special power makes an appointment to an object of the power in consideration of a benefit conferred upon or promised to a non-object, the appointment is ineffective to whatever extent it was motivated by the purpose to benefit the non-object * * *." [Restatement, Property, § 353]. Such an exercise of a special power is held to be a fraud upon the power and hence void. [Matter of Carroll, 1937, 274 N.Y. 288, 8 N.E.2d 864, 115 A.L.R. 923; Chenoweth v. Bullitt, 1928, 224 Ky. 698, 6 S.W.2d 1061; Degman v. Degman, 1896, 98 Ky. 717, 34 S.W. 523; Pitman v. Pitman, 1943, 314 Mass. 465, 50 N.E.2d 69, 150 A.L.R. 509.] Decisions of the courts of England have added the reverence of antiquity to this principle [Lee v. Fernie, 1 Beavan 483, 48 Eng.Repr. 1027 (1839); In re Marsden's Trust, supra, 4 Drewry 594, 62 Eng.Repr. 228; In re Kirwan's Trusts, L.R. 25 Ch. Div. 373 (1883)], and in the absence of California decisions or statutes to the contrary, the law of California must be presumed to be in accord with the common law of England [Cal.Pol.Code, § 4468].

■ The manifest purpose of the rule is to insure that the intention of the donor of the power be effectuated. An appointment to a non-object, by direction or indirection, patently negatives the donor's intent, is technically a fraud on the power, and a breach of trust. Such action by a trustee in fraud of a power necessarily defeats at least in part the purpose of the trust. When such a circumstance exists, a court of equity should declare the appointment void. [In re Kirwan's Trusts, supra, L.R. 25 Ch. Div. 373 (1883); Chenoweth v. Bullitt, supra, 1928, 224 Ky. 698, 6 S.W.2d 1061.]

■ It is urged that since the evidence does not show defendant Title Insurance and Trust Company was a party to the "fraud"—knew of the co-trustee's purpose to benefit a non-object of the power—the appointment is valid because only partly tainted. There is no merit to this contention. Both trustee and co-trustee "must unite in any act to bind the trust property" [Cal.Civ.Code, § 2268]. If one is legally incapable of uniting with the other to do an act, the purported joint action can have no legal effect.

■ Moreover, the Civil Code of California provides in § 2239 that "a trustee is responsible for the wrongful acts of a co-trustee to which he consented * * *." It is not necessary that the co-trustee act with the state of mind of the wrongdoer to share responsibility for wrongful acts. It is likewise unnecessary that the consenting trustee have the fraudulent state of mind of his co-trustee to render the united action ineffective.

■ It is my opinion, therefore, that the challenged exercise by the trustees of the power of appointment conferred under Trust No. P-10453 was ineffective to change the distributive shares. It follows that plaintiff is entitled to 20% of the net trust estate available for distribution.

Counsel for plaintiff will submit findings of fact, conclusions of law and judgment pursuant to local rule 7 within ten days.

**MARION et al. v. GLENN, Collector of Internal Revenue.**

Civil Action No. 919.

District Court, W. D. Kentucky, at Louisville.

July 23, 1948.

Byron & Sandidge and Carroll E. Byron, all of Owensboro, Ky., for plaintiffs.

David C. Walls, U. S. Atty., of Louisville, Ky., Sewell Key, Acting Asst. Atty. Gen., and Andrew D. Sharpe and Courtney C. Hamilton, Sp. Assts. to Atty. Gen., for defendant.

SHELBOURNE, District Judge.

W. S. Hazel, a resident of Daviess County, Kentucky, died February 13, 1941. He was then past eighty-seven years of age. Seventeen years prior to his death, he and his wife, conveyed, by separate deeds, certain of his property to his four children, Mary James Marion, Chloe H. Gropp, J. B. Hazel and Jane Hazel. J. B. Hazel has died since the death of W. S. Hazel.

This action was instituted by Mary James Marion and Chloe H. Gropp to recover a portion of a Federal estate tax, assessed by the Commissioner of Internal Revenue against the estate. The portion sought to be recoverd by plaintiffs amounts to $4,-424.70, with interest from May 31, 1944.

W. S. Hazel executed his will February 20, 1928, which he amended by a codicil June 2, 1938.

The relevant facts were submitted by stipulation which, omitting copies of the deeds, will and codicil attached thereto as exhibits, is as follows:

"It is stipulated by and between the plaintiffs and the defendant, by counsel, that the following stipulation of facts shall be considered as the evidence in this case and that the case be submitted, on the record as it now stands including this stipulation, and that the Court set the case to a day for oral

argument, after which the parties may file briefs.