**Marie F. LEITH, Plaintiff, Appellant,**

**v.**

**MERCANTILE TRUST COMPANY NATIONAL ASSOCIATION, Defendant, Respondent.**

**No. 32743.**

St. Louis Court of Appeals.

Missouri.

Nov. 21, 1967.

Motion for Rehearing or for Transfer to Supreme Court Denied Dec. 27, 1967.

Lewis, Rice, Tucker, Allen & Chubb, R. Walston Chubb, John L. Davidson, Jr., St. Louis, for plaintiff-appellant.

Thompson, Mitchell, Douglas & Neill, Richard W. Metz, W. Stanley Walch, David F. Ulmer, St. Louis, for defendant-respondent.

RUDDY, Judge.

This is an action by plaintiff, Marie F. Leith, who was an appointee and sole distributee of a trust estate, for damages in the sum of $10,539.56 against the Mercantile Trust Company National Association, hereinafter referred to as Mercantile, for an alleged breach of trust in the premature and unauthorized liquidation of a trust estate in which it was Trustee. The decree and judgment of the trial court was in favor of defendant, Mercantile, and plaintiff appealed.

The facts. Plaintiff's grandmother, Mary E. Holzhausen, a resident of St. Louis County, Missouri, died April 30, 1917 leaving a Will, wherein, she bequeathed one-fourth of the residue of her estate to the Mississippi Valley Trust Company, as Trustee, in trust for her daughter, Clara H. Rosenthal, of Paris, France, for her natural life and directed that the trustee shall from time to time pay to her daughter all of the net income of the trust estate. Her Will then provided that "On her death (daughter, Clara Rosenthal) said trust shall end, and thereupon the trustee shall convey, transfer and deliver the then income and principal of the trust estate as my daughter Clara may by last Will direct, and in event of default of such direction by Will, then to her descendants, if any; otherwise to my then heirs at law under the laws of Missouri. * * *" The defendant, Mercantile, through a consolidation proceeding succeeded the Mississippi Valley Trust Company as Trustee of the trust estate created under the Will of Mary E. Holzhausen. As noted, the aforesaid Will provided that the daughter of the testatrix have a power of appointment over the accrued income and principal of the trust estate. In default of the exercise of such power the trust estate was to be distributed to the descendants of Clara Rosenthal, if any, otherwise, to the testatrix's heirs at law.

Clara Rosenthal, daughter of the aforementioned testatrix, was the aunt of plaintiff. She died on March 31, 1962, in France. She executed a Will on October 27, 1961, wherein, she declared she was "an American citizen, now residing in France," in which Will she exercised the power of appointment in the following language: "I bequeath all of my said property, including any over which I may have any power of appointment, to my devoted niece, MARIE FERNOW LEITH."

The remains of Clara Rosenthal were brought back to St. Louis for burial; however, the probate of her Will and the administration of her estate took place in the State of Florida, where plaintiff was at the time of the death of her aunt, Clara Rosenthal. The plaintiff was appointed Executrix without bond in a Florida Administration of Clara Rosenthal's Estate.

At the time of the death of Clara Rosenthal the corpus of the trust estate created under the Will of Mary E. Holzhausen was invested entirely in units of a Common Trust Fund maintained by Mercantile, the Trustee, under a published Plan of Common Trust Fund of Mercantile Trust Company. This Common Trust Fund was established pursuant to Section 363.225 RSMo 1959, V.A.M.S., which reads as follows:

"Any state or national bank or trust company qualified to act as fiduciary in this state may establish common trust funds for the purpose of furnishing investments to itself as fiduciary, or of itself and others, as co-fiduciaries; and

may, as such fiduciary or co-fiduciary, invest funds which it lawfully holds for investment in interests in such common trust funds, if such investment is not prohibited by the instrument, judgment, decree, or order creating such fiduciary relationship, and if, in the case of co-fiduciaries, the bank or trust company procures the consent of its co-fiduciaries to such investment."

The number of units in the Holzhausen trust held by Mercantile was 4,133.

In the Plan of the Common Trust Fund no moneys were to be invested in this Fund other than from funds of a trust of which the Mercantile Trust Company was the trustee or a co-trustee. The Common Trust Fund was exclusively for the collective investment and reinvestment of moneys of trusts in which Mercantile was either sole trustee or a co-trustee. No one else could invest funds in the Common Trust Fund and, therefore, no one else could hold participating units of beneficial interest in the Common Trust Fund maintained by Mercantile as Trustee. As a result the units were nontransferable. The Common Trust Fund included the assets of many trust estates in which the Mercantile was trustee or cotrustee. Its Plan provided: " * * * No sharing trust shall be deemed to have individual ownership of any assets in the common fund, but shall be deemed to have a proportionate undivided beneficial interest in the common fund." Under the Plan the Common Fund was to be administered in conformity with the laws of the State of Missouri and of the United States and specifically included: " * * * the rules and regulations prevailing from time to time of the Board of Governors of the Federal Reserve System pertaining to the Collective investment of trust funds by National Banks, * * *." A determination of the value of the Common Fund and its assets was made as of the close of business on the last business day of each of the months of February, May, August and November of each year. The value on any valuation date of each unit into which the Common Fund

was divided was determined by dividing the then value of the Common Fund by the number of units into which the Common Fund was then divided.

Especially pertinent to the issues raised in this appeal by plaintiff are the provisions of the Plan pertaining to the method of withdrawal of the units of beneficial interest from the Common Fund. The Plan provided that no beneficial shares shall be withdrawn from the Common Fund except as of a valuation date, (which was made on quarterly dates only) and on the basis of such valuation. In connection with such withdrawal the Plan provided as follows: " * * * Such payment shall be made in the discretion of the Trustee in cash, or ratably in kind, or partly in cash and partly ratably in kind, provided that all such payments or transfers as of any one date shall be made on the same basis. * * *" However, with regard to this provision, Charles N. Welsch, Jr., a trust officer of Mercantile, testified that with over a million units outstanding in the Common Trust Fund " * * * it would be practically impossible to make a distribution in kind, to any withdrawing party."

As pointed out heretofore, Clara Rosenthal died March 31, 1962. On April 23, 1962 James Nemec, a Florida attorney, wrote Mercantile advising it that he represented plaintiff and that Clara Rosenthal had died. He said he was preparing to probate the Will of Clara Rosenthal in Florida and inquired about the terms of the Will of Mary E. Holzhausen "and in what form are the assets of the trust." He then said: " * * * It is possible that Mrs. Leith may elect to retain her interests in the Trust in St. Louis and have the same transferred to her name." Plaintiff testified she received a copy of this letter from her attorney.

On April 26, 1962, Welsch wrote to Nemec acknowledging receipt of the aforesaid letter. In his letter, Welsch described the terms of the Holzhausen Will and said:

"At the date of the last review about a year ago the account had a value of

$94,918.00, the trust consisting of 4,133 units of beneficial interest in our Common Trust Fund. *These units will be withdrawn at the next valuation date of the Fund on May 31st.* The value of the account is probably somewhat higher than the above figure at the present time since the value of the Common Trust Fund units has risen from a value of $22.95 per unit in May of last year to a valuation of $24.15 in February of 1962. * * *" (Emphasis ours)

Welsch then told Nemec that a Missouri Inheritance Tax Waiver, a certified copy of Mrs. Rosenthal's will, and the order admitting it to Probate, together with a certified copy of her death certificate would be needed before " * * * delivery of the assets to the appointee or to Mrs. Rosenthal's descendants in default of appointment." Welsch said that if Mrs. Rosenthal did not exercise her general power of appointment an affidavit from some person identifying the descendants of Mrs. Rosenthal would be required. In this letter Welsch said he was "somewhat disturbed by Section 732.33" of the Florida Probate Laws which he said seemed to indicate that under certain circumstances a later will could be enforced at any time before three years from the date of discharge of the Executrix. He asked Mr. Nemec for his comments on the effect of this section of the Florida laws. It will be noted that Welsch said nothing in his letter to Nemec about the right of plaintiff to elect to retain her interests in the Trust and have the same transferred to her name. Plaintiff testified that her attorney sent her a copy of this letter from Welsch and said she noted the sentence that stated the units will be withdrawn at the next valuation date of the Fund, May 31st. On May 31, 1962, Welsch wrote Nemec inquiring about the status of the administration of the Estate, pointing out that " * * * the distribution of our Trust depends on the contents of Mrs. Rosenthal's Will or proof that she left no Will. * * *"

The Mercantile, immediately after being notified of the death of Clara Rosenthal in Nemec's letter of April 23, 1962, took steps to terminate the Trust and Welsch, in his capacity as Trust Officer, requested the Investment Department to withdraw the Holzhausen Common Trust Fund units from the Common Trust Fund on the valuation date next following, namely, May 31, 1962. The units were withdrawn on May 31, 1962 and the proceeds therefrom were invested in short term treasury bills. At the time the units of the Common Trust Fund were withdrawn Mercantile had not received a copy of the Will of Clara Rosenthal. When the units were withdrawn no determination had been made by the Trustee when the distribution could be made or to whom it could be made. On June 1, 1962, Nemec forwarded to the Mercantile a copy of the Will of Clara Rosenthal. In his letter Nemec stated that "the probate of this estate will be slow." On September 24, 1962 Nemec wrote the Mercantile that plaintiff "has now qualified as Executrix" and enclosed certified copies of Letters Testamentary. In this letter Nemec asked Mercantile "to transfer the Trust to Mrs. Leith." Thereafter, Welsch wrote to Nemec telling him "As I mentioned in my April 26 letter, we will not distribute our trust until the time has elapsed for the contesting of Mrs. Rosenthal's Will or the appearance of another Will has been foreclosed." He advised Nemec that the assets of the Trust are now invested in U. S. Treasury Bills and will be kept so invested until the time for distribution. He again asked Nemec for his comments on the Florida Probate Law as previously requested. On October 18, 1962 Welsch again advised Nemec that "All units were surrendered 6/30/62 * * *. Proceeds invested in Treasury Bills."

At the time of the withdrawal of the units from the Common Trust Fund Welsch had not seen a copy of the Will of Clara Rosenthal and, therefore, did not know if she had exercised her power of appointment. While he had heard of Mrs. Leith

(plaintiff) in connection with the Mercantile's administration of the Holzhausen Trust, he did not know her relationship to Clara Rosenthal; he did not know whether Clara Rosenthal had any descendants and, if so, who they were; he did not know who the heirs at law were, if any, of Mary E. Holzhausen.

It was stipulated by the parties that it was the duty of the Trustee (Mercantile) to determine the identity of the proper and lawful distributees of the Fund entrusted to it. It was the practice of Mercantile, as Trustee, to withhold distribution of the Trust Estate where it was distributable to an appointee under a testamentary power of appointment until such time as the Will purporting to exercise the power of appointment may no longer be contested. Welsch testified that this was done in order to be sure the Will under which the Trustee would. make the distribution was the last Will and Testament of the person on whom the power of appointment had been conferred. He further testified that if there were Federal or State taxes involved the Trustee would determine what taxes it might be called upon to pay and reserve a sufficient amount to pay these taxes and distribute the balance of the assets when it determined that the time for filing a Will contest had elapsed.

Welsch further testified that he checked the Florida Statutes to determine how long the Trustee would have to wait before distribution and that in the course of his check he found one of the Statutes ambiguous, " * * * at least it didn't definitely state what that time would be, * *." Because of this ambiguity he asked Nemec for his comments as previously pointed out. At the time he read the Florida Statutes he had no idea how long it would take to distribute the property. His reading of the Statutes seemed to indicate that under certain circumstances a later Will could be enforced at any time before three years from the date of discharge of the Executrix. It was his opinion at the time of his research that it could go as long as three

years. He said that it was finally determined by counsel of Mercantile that it was necessary to wait for distribution of the Trust property until the Executrix in Florida was discharged. However, when the units were withdrawn on May 31, 1962 from the Common Trust Fund no determination had been made then when distribution could be made. On December 12, 1962 Welsch, in a letter to Nemec, advised Nemec that the Trustee would not be in a position to distribute the assets of the Trust until the discharge of the Executrix. He asked Nemec for any comments he may have on the position taken by the attorneys for Mercantile with reference to the time of distribution.

On April 15, 1963 Nemec wrote to Welsch complaining about a number of things, among which was a complaint about the date of withdrawal of the units from the Common Trust Fund. In this regard Nemec said:

"Now with regard to the value of the Trust, this value will be placed as of date of death, to wit, March 31, 1962, and not as of any other date.

"The value of the Trust Certificates is as of March 31, 1962, and appear to be $24.1509.

"At the time the bank selected to sell the units it appeared that a loss was incurred. This loss would be no fault of the Executrix, in that she did not authorize the sale of these units at the time they were sold. The time of sale apparently was at the selection of the bank.

"The bank apparently sold the Certificates in the Trust Fund and then reinvested in Treasury Bills. There would be no reason for doing this in view of the fact that the evaluation of the Estate was optional by the Executrix either as of date of death or one year later, for tax purposes.

"The mechanics of the bank sale of the units at the end of each so-called quarter is of no moment to the Estate

as the value would be fixed at the date of death, which would be as above quoted."

Counsel for Mercantile, in response to the aforesaid letter, advised Nemec on May 2, 1963 that the units in the Trust Fund were not transferable and could only be redeemed at quarterly payment dates. Counsel then told Nemec:

"Since the death of Mrs. Rosenthal was the event terminating the trust, the trust company believed that the trust estate should be withdrawn from the trust fund so as to be in liquid form and transferable when the assets became distributable. Therefore, the units in the Common Trust Fund were redeemed on the next redemption date which was May 31, 1962. As you will remember, there was a large drop in the market on May 30, 1962, which resulted in the value of the units in the Common Trust Fund at the time they were redeemed being $2.14 per unit lower than the value immediately preceding Mrs. Rosenthal's death."

Welsch, in his testimony said that it was the feeling of the Trustee that the Trust having terminated, the Trust Funds could no longer be held in the Common Trust Fund account and for this reason the units were withdrawn at the first opportunity which was May 31, 1962. When asked if he regarded the Trust Company no longer Trustee after the termination of the Trust, he said that the Trust Company was still Trustee to wind up the Trust, " * * * to take the necessary steps to wind it up. We still have powers, if necessary, to wind up the trust; however, we feel that we should begin to wind it up and take the necessary steps as soon as possible." At this juncture we point out that the Will of Mary E. Holzhausen gave the Trustee the power " * * * at its discretion from time to time and without order of court, to sell and transfer any securities held by said trustee."

On May 31, 1962, the market value of each unit of the Common Trust Fund was $22.0166. It was stipulated that according to the Commercial & Financial Chronicle the Dow Jones averages for 65 stocks on March 29, 1962 was $242.76 and thereafter dropped to a low on May 28, 1962 of $198.01 and on May 31, 1962 was $211.30. Welsch in his testimony acknowledged that this was a publication that would be relied on in the security business for the purpose of market index on the Dow Jones average.

Mr. Welsch in his testimony gave the per unit value of the beneficial interests in the Common Trust Fund on the following dates: February 28, 1962–$24.1509; May 31, 1962–$22.0166; August 31, 1962–$21.5881; November 30, 1962–$22.5086; February 28, 1963–$22.9949; May 31, 1963–$24.0381; August 31, 1963–$24.5667. Welsch testified that between April 26, 1962, the date he wrote to Nemec advising him that the unit valuation in February of 1962 was $24.15, and May 31, 1962, when the units were withdrawn from the Common Trust Fund, he had not checked the fluctuation in value of the Common Trust Fund units and said no check into the value of the units was made until the valuation date, May 31, 1962. He stated that the value was not checked in his department.

At no time prior to May 31, 1962, the date of the withdrawal of the units, did Mercantile send to plaintiff or to her attorney a copy of said Plan of the Common Trust Fund; or, was such a copy requested by the plaintiff or her attorney. Mr. Welsch testified that the Mercantile very rarely sends a copy of the Plan to anyone. Plaintiff testified she had no knowledge of the Plan of the Common Trust Fund and had never been informed about it. Welsch testified that neither plaintiff nor her attorney were advised prior to the letter of May 2, 1963 from counsel for Mercantile to Nemec that the Common Trust Fund units were not transferable. He also testified that he did not advise plaintiff or Nemec of the provision of the Plan providing for ratable distribution in kind and of the impracticability of the withdrawal in kind.

On August 8, 1963, Nemec notified Mercantile that the Executrix had been discharged and that her discharge took place July 23, 1963. On August 27, 1963 Mercantile tendered a check in the amount of $90,271.84 in full payment to plaintiff on the termination of the Trust. This check was apparently refused by the plaintiff and on November 29, 1963 a partial distribution was made, reserving to plaintiff the right to bring this action. The distribution accounted for 4,133 units of the Common Trust Fund at $22.0166 per unit or a total sum of $90,994.61 for all of said units.

On May 31, 1962 the Common Trust Fund held assets of over $33,000,000 divided into 1,537,866 units, which were held by 965 participating trust estates in which Mercantile was either sole trustee or a co-trustee. The assets of the Fund consisted of preferred and common stock of many corporations, corporate and governmental bonds and cash. Such a Fund offers a wide diversification in investments, which is denied small individual trust estates and offers greater efficiency and economy in operation. An additional advantage is exemption from the imposition of federal income tax (26 U.S.C.A. § 584) which can be obtained only by compliance with Regulations of the Federal Reserve System, which provided in part that no bank administering a Common Trust Fund shall issue any document evidencing a direct or indirect interest in such Common Trust Fund in any form which purports to be negotiable or assignable. The Regulations further provided that the assets in a Common Trust Fund shall be considered as assets held by the bank as fiduciary.

■ Plaintiff in her first point relied on contends that she, as sole distributee or appointee of the trust estate, had the right upon termination of the life estate, to demand and receive distribution in kind and that this right of virtual ownership included the right to control the time of liquidation of the trust estate. In this connection she further contends that she had this right notwithstanding any express or implied power or direction conferred upon the Trustee to sell during the period of winding up after the end of the trust. We cannot understand plaintiff's contention that she had the right to demand and receive distribution in kind, when in her brief, she says, " * * * we are inclined to agree that it was impracticable to use the provision of the Plan which permitted ratable division and distribution of underlying securities in kind. * * * " We agree with this inclination and observation of plaintiff that it was impracticable to make distribution in kind. While it is true that the Plan of the Common Trust Fund permitted the Trustee to withdraw the units in exchange for underlying securities held in the Fund, it seems obvious to any reasonable person that such a withdrawal would have been impracticable in view of the numerous underlying assets held in the Fund and the large number of participating individual trust estates. Further, whether the withdrawal of the units should be paid in cash or ratably in kind or partly in cash and partly ratably in kind was left to the discretion of the Trustee and we find no evidence of abuse of its discretion in this regard. In fact plaintiff tacitly agrees that there could be no abuse of discretion when she virtually admits that it was impracticable to make the distribution of underlying securities in kind.

■ If plaintiff, in her contention that she has the right to receive distribution in kind, means the units in the Common Trust Fund held by the Mercantile, the answer to this is obvious. Under the law only a bank acting as fiduciary or co-fiduciary is eligible to invest the trust funds in a Common Trust Fund maintained by the bank. Obviously, as we pointed out, if no one other than the bank can hold these units under the law they cannot be assigned or transferred to the plaintiff. Further, such a transfer or assignment is prohibited by Regulation F, promulgated by the Board of Governors of the Federal Reserve System.

As said in 90 C.J.S. Trusts § 329, p. 555, "* * * A Trustee investing in such a trust (Common Trust Fund) is not purchasing a fractional share of the trust fund's investment, but is investing in the fund as an entity." We point out that the right of Mercantile as Trustee to invest the principal of the instant trust estate in the Common Trust Fund is not challenged by plaintiff. In Scott on Trusts, Vol. III, § 347, pp. 2530 and 2531 it is said: "* * * Where the time for the termination of the trust has arrived and it becomes the duty of the trustee to transfer the trust estate to the person or persons entitled thereto, the question arises whether it is his duty to transfer the property in kind or to sell it and pay over the proceeds. The answer to this question may depend upon a number of factors. Among these factors are * * whether a division in kind is practicable; * * *."

■ Plaintiff in her other contention raised in her first point claims she had the right of virtual ownership of the trust's assets upon the termination of the Trust Estate, which she says took place immediately after the death of Clara Rosenthal and, therefore, she had the right to control the time when liquidation should take place. We assume that plaintiff means that she had the right to control the time when the units would be withdrawn from the Common Trust Fund by virtue of her alleged right of ownership of the units. The obvious answer to this is, she could not under the law own units in the Common Trust Fund. Our statute, Section 363.225 RSMo 1959, V.A.M.S. only permits a bank or trust company acting as a fiduciary or co-fiduciary to invest in the fund, therefore, inferentially, the statute prohibits anyone else from holding investments or units representing investments in the fund. Further, Regulation F of the Board of Governors of the Federal Reserve System prohibited assignment of the units. There are other reasons why plaintiff cannot claim virtual ownership of the Trust's assets, especially as of the date of withdrawal of the units

from the Common Trust Fund, namely, May 31, 1962. On that date Mercantile could not be charged with certain knowledge of the identity of the ultimate taker or takers of the Trust Fund. The only certain knowledge it had was that Clara Rosenthal had died and that Nemec was preparing to probate her Will. Nemec, in his letter of April 23, 1962, said nothing about the terms of the Will of Clara Rosenthal; whether she had exercised her power of appointment given under the Holzhausen Will was not said. As a matter of fact Nemec's letter did not indicate he knew Clara Rosenthal had a power of appointment, for he inquired about the terms of the Holzhausen Will and the form of the assets of the Trust Estate. It is true that he said he represented plaintiff but he did not say in what capacity. He could have represented her in her capacity as Executrix under the Will of Clara Rosenthal; or as named remainderman of the Trust Estate under the Will of Mary E. Holzhausen; or as one of many appointees under the Will of Clara Rosenthal; or as a taker or one of many takers under the Will of Mary E. Holzhausen, if Clara Rosenthal failed to exercise her power of appointment. It must be remembered Nemec did not know the terms of the Holzhausen Will. If he knew—why ask Mercantile?

■ In view of the above mentioned uncertainties and possibilities and others referred to hereafter, plaintiff cannot claim virtual ownership over the Trust assets on or prior to the date of the withdrawal of the units from the Common Trust Fund on May 31, 1962. She had no right of control as of or prior to that date. If we would assume, that Mercantile had been fully informed prior to May 31, 1962 of the terms of Clara Rosenthal's Will, and, therefore, that plaintiff was named as the sole appointee of the Trust Estate, nevertheless, plaintiff could not claim virtual ownership at that early date for many reasons. (1) Clara Rosenthal's Will had not been probated and was not probated

until September 24, 1962; (2) a later Will might have been found appointing someone other than plaintiff; (3) Clara Rosenthal's Will or its probate may have been attacked for a number of reasons (a) improper execution, (b) lack of testamentary capacity to make a Will, (c) lack of jurisdiction in the Florida Court, (Clara Rosenthal resided and died in France), (d) may have been procured through fraud or undue influence; (4) the power of appointment may have been improperly executed.

Of course, all of the aforesaid possible exigencies did not occur but this result could not have been previsioned by Mercantile on May 31, 1962. We agree with Mercantile in a statement in its brief that had any of these possibilities occurred and had Mercantile followed plaintiff's instruction respecting the withdrawal or non-withdrawal of the Common Trust Fund units and had a loss resulted, Mercantile might have been liable to the ultimate taker in default or appointee other than plaintiff. It was the duty of Mercantile as Trustee to ascertain with certainty the identity and extent of pecuniary interest of the taker or takers of the Trust Fund, whether under a valid exercise of the power of appointment or as a result of default in the exercise thereof. As in this case, this may not be established with sufficient certainty for some time subsequent to the termination of the trust. State ex rel. St. Louis Union Trust Co. v. Sartorius, 350 Mo. 46, 164 S.W.2d 356, Breen v. Breen, 411 Ill. 206, 103 N.E.2d 625, Restatement of the Law, Trusts 2d, § 344, Comment a and § 345, Comment j. Plaintiff's right to the trust property had to await a determination of the proper exercise by Clara Rosenthal of the power of appointment. It could be exercised only in a valid Will. Pitman v. Pitman, 314 Mass. 465, 50 N.E.2d 69, 150 A.L.R. 509; 41 Am.Jur., Powers, §§ 35, 36, 37 and 39. The burden of proving a valid exercise of a power of appointment rests on plaintiff. 72 C.J.S. Powers § 43a, p. 455. This could not be determined until the Will of Clara

Rosenthal had run the gauntlet of time permitting contest of the Will. This was conceded in plaintiff's brief when she said: "The principal delay occurred in probating and establishing the Will of Clara Rosenthal in Florida to the point beyond the possibility of contest. Such validation of the Rosenthal Will was properly required by the Trustee at the outset, for its protection, if and when it distributed the estate to the plaintiff as appointee named in the Rosenthal Will. * * *" Plaintiff was not the virtual owner of the trust assets with the right to control the time of liquidation. This was true on May 31, 1962.

Mercantile continued as Trustee after the death of Clara Rosenthal. Although the time for the termination of the trust estate had arrived Mercantile continued to be Trustee until it distributed the trust property. During the period of winding up the trust it was under a duty to take such steps as were necessary toward distribution and to exercise reasonable care and skill in the preservation of the trust property until it had made distribution. It had such powers and duties as were appropriate for the winding up of the trust. Breen v. Breen, supra, Restatement of the Law, Trusts 2d, § 344, Comments a, b, c, and h, Scott on Trusts, Vol. III, § 344.

Next, plaintiff seems to contend that Mercantile should not have withdrawn the units after it was notified in Nemec's letter of April 23, 1962, that it was "possible" that plaintiff may retain "her interests in the Trust" and have the same transferred to her name. What we have said shows that the units could not be transferred to her, nor was it practicable to transfer the underlying assets. This contention is based on plaintiff's claimed right of virtual ownership and, therefore, the right to decide when the trust's assets should be liquidated. We have shown that plaintiff had no such claim as of April 23, 1962 and, therefore, had no legal right to demand distribution in kind

or control the date of withdrawal of the units. Furthermore, if we assume plaintiff had the right to elect to take in kind she did not manifest her intention to so elect in a sufficient manner when she merely said "it is possible" that she may so elect. Kaufmann v. Kaufmann, 226 Mo. App. 172, 43 S.W.2d 879, 1. c. 881. There is still another reason why this contention has no validity. On April 26, 1962, Mr. Welsch, trust officer for Mercantile notified plaintiff, through her attorney, that the units would be withdrawn at the next valuation date of the Fund on May 31, 1962. Plaintiff testified that her attorney sent her a copy of the letter from Welsch and that she noted the sentence that stated the units would be withdrawn on May 31, 1962. No protest was made concerning the proposed action to withdraw these units on May 31, 1962 in Nemec's letter to Welsch of June 1, 1962. Nemec merely asked the Mercantile to transfer "the trust to Mrs. Leith." The first apparent complaint made by Nemec about the withdrawal date of the units came almost one year later, in his letter of April 15, 1963 to Welsch, wherein he complained about the date of the withdrawal of the units from the Common Trust Fund. We find no validity in this contention of plaintiff.

In the same area plaintiff contends that the statement contained in Welsch's letter of April 26, 1962 that the units "will be withdrawn at the next valuation date of the Fund on May 31" was not an understandable notice that the entire trust estate was to be reduced to cash and the investment in effect sold. She contends the term "withdrawn" was a technical term not in general use as to indicating sale of securities and says the language used in its ordinary meaning does not convey notice of the intended liquidation and that she did not understand it to mean the immediate cashing in of the entire trust estate held for distribution. She says there is evidence in the record that the statement was not understood by her attorney, Mr. Nemec. We fail to find such evidence in the record. We do find that plaintiff attempted to testify about her experience with Common Trust Funds and knowledge of ordinary Mutual Funds. The court excluded her offer of testimony about her lack of understanding of the technical wording in defendant's disclosure about the trust property and because of this exclusion she claims the trial court erred. We do not think so. All correspondence was carried on between plaintiff's attorney and Mr. Welsch. We agree with Mercantile's statement in its brief that attorneys ought to be presumed to be of ordinary competence. The uniform Common Trust Fund Act was in force in twenty-eight states as early as 1957 including Florida (Section 660.11–14, Florida Statutes Annotated which became effective on May 19, 1941). We see no need to devote much attention to this complaint of plaintiff because we find no evidence that Nemec misunderstood Mercantile's statement as to its intentions to withdraw the units. Further, as an attorney he is presumed to understand. The knowledge of plaintiff's attorney is knowledge of or is imputed to, plaintiff. Lisanby v. Illinois Cent. R. Co., 209 Ky. 325, 272 S.W. 753; 7 C.J.S. Attorney and Client § 69, p. 853. Mercantile's dealings were with plaintiff's attorney and Mercantile had the right to rely on plaintiff's attorney explaining to her the meaning of the statement contained in the letter of Mr. Welsch. We think there was sufficient disclosure of what Mercantile intended to do in connection with the units it held as Trustee in the Common Trust Fund.

Plaintiff asserts many other complaints. However, a sufficient answer to these complaints will be found in our discussion of her contention that Mercantile failed to exercise any discretion whatever in the selection of the time for the withdrawal of the units when it followed an " * * * arbitrary policy of liquidation at the first opportunity following the end of the trust period." She contends that when Mercan-

tile concluded that it could not assign the units to her that its " * * * remedy was always to liquidate at once at the earliest opportunity, regardless of the time which was certain to elapse for deliberation, investigation and consultation." She contends that the time available would be possibly three years, and eventually turned out to be a year and a half and during this time the liquidation could have been made at any quarterly period. Again, she says it was her choice, to be exercised as the virtual owner of the trust assets and not the choice of the Trustee. She says that Mercantile exercised no discretion but followed a fixed policy of immediate liquidation without deliberation and points out that a Trustee must exercise discretion. In further support she says that Mercantile was a professional trustee handling investments of many millions of dollars and had available the Commercial and Financial Chronicle containing indexes of the market developments during the relevant period and, therefore, knew the market for Common Stocks was subject to fluctuation. She concludes with the charge that there was no consideration of the importance of the time chosen for liquidation of the trust estate and that, therefore, Mercantile failed to exercise discretion.

 What we have said heretofore disposes of plaintiff's contention that she was the virtual owner and, therefore, had the right to choose the time for withdrawal of the units. It is true that a Trustee is under a duty to exercise a reasonable discretion. In considering whether a Trustee reasonably exercised its discretion, we must look to the facts and circumstances surrounding the Trustee at the time it acted, without the aid of the retrospective view we now have. We need not repeat the uncertainties we have shown that were facing Mercantile, as to the ultimate taker of the trust fund and when it would be necessary to make distribution, when Mercantile was notified of the death of Clara Rosenthal.

It was also faced with the knowledge that it could not transfer and convey the units to the ultimate taker and that it was impracticable to make a distribution in kind of the underlying securities in the Common Trust Fund.

In Scott on Trusts, 2nd Ed., Vol. III, § 344, pp. 2517 and 2518, it is said, in part, as follows:

"When the time for termination of the trust has arrived, the duties and powers of the trustee do not immediately cease, but until the trust is actually wound up, he has such duties and powers as are appropriate for the winding up of the trust. The trust ordinarily does not automatically terminate merely because the time for distribution has arrived; it is terminated only when the trustee has finally accounted and conveyed the trust property to the persons entitled to it on the termination of the trust.

"Even though the time for the termination of the trust has not arrived, the fact that it is approaching has a bearing on the duties and powers of the trustee. * * * As has been stated, the trustee in making investments should not ordinarily invest in property which cannot readily be reduced to cash at the time of the termination of the trust. * * * In other words, in the exercise of the duties and powers prior to the time for the termination of the trust, he must take into consideration the nearness of the approach of the time for termination."

 When the time for the termination of the trust has arrived the Trustee ordinarily loses the power of further investment. It becomes the duty of the Trustee in the winding up process to convert the assets of the trust fund in such a manner as to make them readily available for distribution and in this connection it is reasonable for the Trustee to make short-term investments in order to keep the trust property productive. This, the instant Trustee did when it invested the proceeds from the

withdrawal of the units from the Common Trust Fund in short-term Treasury Bills.

We do not agree with plaintiff's contention that Mercantile followed an arbitrary policy of liquidation at the first opportunity following the end of the trust period. Plaintiff points out that the available time was possibly three years and eventually turned out to be a year and a half during which time she contends the Trustee could have made the liquidation at any quarterly period. It must be remembered, as we have pointed out, that at the time the Trustee withdrew the units from the Common Trust Fund it had not received a copy of the Will of Clara Rosenthal; therefore, did not know the ultimate distributee and of more importance Mercantile had not made and could not make a determination at that time when the distribution should be made. Whether it had to make distribution within a short period of time or over the one and a half year period that was ultimately the time was not known at the time it withdrew the units from the Fund. We do not agree that Mercantile exercised no discretion. For it to have delayed the withdrawal of the units to some date in the future on which the market value of the underlying securities would have been at a higher level than it was on the date of withdrawal would have been speculative and had the market value of the underlying securities continued to decline, as it did for some period (until August 31, 1962) subsequent to the withdrawal date, and had it not recovered in value Mercantile may have been liable to the distributee for unwarranted delay in preparing the trust estate for distribution. See Restatement of the Law, Trusts 2d, § 345, Comment f. The Trustee is not required to forecast unexpected rises or falls in the stock market but is only required to act with prudence. Bogert, Trusts and Trustees, 2d Ed., § 745, p. 608. The Trustee is not required to be infallible in its judgment or to be able to prophesy the future and the reasonableness of its judgment can not be measured in the light of events subsequent to the exercise of its judgment. Boland v. Mercantile-Commerce Bank and Trust Co., 349 Mo. 731, 163 S.W.2d 597, 601. No evidence has been adduced which would indicate that the Trustee did not act with prudence in selecting the time of withdrawal of the units from the Common Trust Fund. In addition and of primary importance, plaintiff is precluded from now complaining about an alleged premature withdrawal of the units because of her failure to protest or oppose said withdrawal when she was notified in Mercantile's letter of April 26, 1962 of its contemplated action, which notice was given approximately thirty-five days before the withdrawal. Plaintiff had time to make known her dissent. Her silence amounted to acquiescence. Her first complaint was not made until April 15, 1963. Her complaint now is based on what has happened since May 31, 1962 and not on what could then have been foreseen.

We have carefully examined the record in this case and plaintiff's contentions lodged in her brief, together with the authorities cited in support of the contentions and we are of the opinion, in view of the facts and circumstances related heretofore, that the judgment exercised by Mercantile was reasonable and not imprudent. The findings, judgment and decree of the trial court are affirmed.

ANDERSON, P. J., and THEODORE McMILLIAN, Special Judge, concur.